UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

ADIDSUDA CHUNTON,

                      Debtor.

Case No. 8-20-73563-reg

Chapter 7

-------------------------------------------------------------------x
PARANEE SARIKAPUTAR ET AL.,

                      Plaintiffs,

      - against -

ADIDSUDA CHUNTON
*aka* Amy Chunton
*aka* Adidsuda Phuprasert
*aka* Amy Phuprasert,

                      Defendant.

Adv. Proc. No. 8-21-08050-reg

-------------------------------------------------------------------x

**DECISION AFTER TRIAL**

This matter is before the Court pursuant to an adversary proceeding commenced by Plaintiffs Paranee Sarikaputar ("Sarikaputar"), Pedro Coj Cumes ("Cumes"), Phouviengsone Sysouvong *aka* Tukta Phouviengsone ("Phouviengsone"), Supunnee Sukasawett ("Sukasawett"), Wipaporn Sittidej ("Sittidej"), Vinai Patan ("Patan"), Phaisit Sirimatrasit ("Sirimatrasit"), Chaichana Kittironnakornkul *aka* Kay Kittironnakornkul ("Kittironnakornkul"), Supatra Wungmarn ("Wungmarn"), and Troy Law, PLLC ("Troy Law") (together the "Plaintiffs") against Adidsuda Chunton (the "Debtor") seeking a finding of non-dischargeability pursuant to 11 U.S.C. § 523(a)(6) and denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

1

The Remaining Plaintiffs[1] are restaurant workers formerly employed by the Debtor or companies she worked for. They argue, *inter alia*, that the Debtor made a series of misstatements in her schedules and statements which warrant denial of the discharge. The Court agrees and, for the reasons stated in this Decision, finds that the Debtor made multiple false statements in her schedules and statements which warrant denial of her discharge under § 727(a)(4)(A).[2]

The Remaining Plaintiffs also argue that debts allegedly owed to them by the Debtor for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, ("FLSA") and the New York Labor Law, §§ 190, 650, *et seq.* ("NYLL"), including but not limited to failure to pay minimum wage and overtime pay, should be found to be non-dischargeable under § 523(a)(6). The Debtor's FLSA and NYLL liability remains unliquidated. Currently pending in the District Court for the Southern District of New York ("District Court") is an action by the Plaintiffs seeking to determine the Debtor's and others' liability under the FLSA and NYLL. On February 9, 2021, this Court lifted the stay to allow the Debtor's liability, if any, to be reduced to judgment in the District Court.

The Court will not make any findings at this time as to the Remaining Plaintiffs' claims under § 523(a)(6). In general, after a § 727 determination has been made and the entirety of the discharge will be denied, any determination under § 523 as to the non-dischargeability of particular debts is moot. *See Ng v. Adler (In re Adler)*, 494 B.R. 43, 56 (Bankr. E.D.N.Y. 2013)

---

[1] Plaintiffs Phouviengsone, Sittidej, Patan, Wungmarn and Troy Law (the "Defaulting Plaintiffs") defaulted, and the complaint was stricken as to them. ECF No. 57. Plaintiffs Sarikaputar, Sukasawett, Kittironnakornkul, Sirimatrasit, and Cumes (the "Remaining Plaintiffs") prosecuted the claims at trial.

[2] The Court notes that denial of the Debtor's discharge under § 727(a)(4)(A) prohibits the Debtor from filing a subsequent bankruptcy in an attempt to discharge the debt owed to the Remaining Plaintiffs. *See* 11 U.S.C. § 523(a)(10).

(collecting cases); *Carto v. Oakley (In re Oakley)*, 503 B.R. 407, 428 (Bankr. E.D. Pa. 2013) (collecting cases). However, under certain circumstances it may be warranted, for example for the sake of completeness, to make findings under § 523 despite a § 727 ruling. *See In re Oakley*, 503 B.R. at 428. In this case, the Court finds it is both unnecessary to make findings under § 523 and prudent in light of the ongoing proceedings in the District Court which will ultimately make a determination as to the Debtor's liability and the nature of that liability.

## FACTS

On December 5, 2019, Plaintiffs Sarikaputar, Cumes, Phouviengsone, Sukasawett, Sittidej, Patan, Sirimatrasit, Kittironnakornkul, and Wungmarn (the "District Court Plaintiffs") filed an action in the District Court against the Debtor and 13 other defendants. The action is currently pending under Index Number 1:19-cv-11168 ("District Court Action #1"). That complaint alleges, *inter alia*, that the Debtor and Veratip Corp. *dba* ThaiNY Restaurant, Ninety-Nine Plus Corp. *dba* ThaiNY Restaurant, J Akira LLC *dba* Tom Yum *dba* M-Thai, Excel Restaurant Group Corp. *dba* Charm's ThaiNY Restaurant *dba* M Thai, 9999 Midtown Corp. *dba* Thai Rice and Noodle, Prosperity 89 Corp. *dba* Thais New York ("Prosperity 89 Corp."), Lucky Charm 6365 Corp *dba* Thais New York ("Lucky Charm"), Opulent Restaurant Corporation *dba* Thais New York, Perapong Chotimanenophan *aka* Peter Chotimanenophan, Michael P. Bronstein *aka* Michael Bronstein, Chardenpong Oonapanyo *aka* Chareonpong Oonpanyo, Ah Di, and Gift Rakowski (together with the Debtor, the "District Court Co-Defendants") denied the District Court Plaintiffs minimum wage and overtime pay, failed to pay spread of hours pay, and

failed to provide the forms and notices mandated by law regarding rates of pay and hours worked, all in violation of various provisions of the FLSA and NYLL.[3]

Before any liability was determined in District Court Action #1, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on December 8, 2020 ("Petition Date"), and District Court Action #1 was stayed as against the Debtor. On February 9, 2021, this Court entered an Order lifting the automatic stay to permit District Court Action #1 to proceed against the Debtor for the purpose of determining her liability in that case, and to apportion liability arising from any judgment among the District Court Co-Defendants. Case No. 20-73563-reg, ECF No. 30. District Court Action #1 is still pending, and no determination of liability has been made.

On March 8, 2021, the Plaintiffs filed a complaint in this Court, which was later amended on July 20, 2021 (ECF No. 15, "Amended Complaint"), seeking denial of discharge pursuant to § 727(a)(4)(A) and a finding of non-dischargeability pursuant to § 523(a)(6) for their claims which are based on the Debtor's alleged FLSA and NYLL liability for unpaid minimum wage and overtime pay. The Debtor filed a motion to dismiss, which was denied by Order dated September 15, 2021. ECF No. 21. The Debtor then filed an answer to the Amended Complaint on September 27, 2021. ECF No. 23. The Court entered an Amended Initial Pretrial Order which set May 31, 2022 as the discovery due date. ECF No. 28. On January 26, 2023, the Debtor filed a Motion to Strike due to the Defaulting Plaintiffs' failure to appear for deposition. After a

---

[3] Although the complaint in District Court Action #1 was not admitted into evidence, this Court will take judicial notice of the adjudicative facts contained in this document. *See* Fed. R. Evid. 201; *see also Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991))). The judicial notice taken here by the Court is not a finding that the facts alleged in District Court Action #1 are true.

hearing, the Court extended the deposition deadline to March 30, 2023. However, the Defaulting Plaintiffs failed to appear for deposition before that date, and so on June 6, 2023 the Court entered an Order granting the Debtor's Motion to Strike Plaintiffs' Complaint and First Amended Complaint as to the Defaulting Plaintiffs.[4] The remaining parties submitted a Joint Pre-Trial Memorandum on June 7, 2023. ECF No. 56.

A two-day trial was held on June 12 and 13, 2023. At the beginning of trial, the Remaining Plaintiffs asked to admit into evidence their affidavits from a separate but related action in the District Court to which the Debtor is not a party. Case No. 1:17-cv-00814 (ALC) (SDA) ("District Court Action #2").[5] These affidavits were admitted without objection. The Remaining Plaintiffs' trial exhibits were also admitted without objection.[6] Plaintiffs Sarikaputar, Sukasawett, Kittironnakornkul, and Sirimatrasit testified at trial. Plaintiff Cumes was unable to attend trial due to a medical emergency, but the parties agreed to admit his affidavit from District Court Action #2 in lieu of his trial testimony subject to any hearsay objection.

At trial, upon completion of the Remaining Plaintiffs' case, the Debtor made an oral motion to dismiss the case, which was denied. The Debtor then testified in her defense. The

---

[4] *See* n.1.

[5] The caption in District Court Action #2 is: *Paranee Sarikaputar and Phouviengsone Sysouvong aka Tukta Phouviengsone, on behalf of themselves and others similarly situated, Supunnee Sukasawett, Vinai Patan, Wipaporn Sittidej, Pedro Coj Cumes, Phaisit Sirimatrasit, Boonyarit Praphai, Kamphol Kiatwanakorn, Chaichana Kittironnakornkul, and Supatra Wungmarn, v. Veratip Corp. dba ThaiNY dba M-Thai dba Thai Rice dba Tom Yum, J. Akira LLC dba ThaiNY dba M-Thai dba Thai Rice dba Tom Yum, ThaiNY Restaurant LLC dba ThaiNY dba M-Thai dba Thai Rice dba Tom Yum, Ninety-Nine Plus Corp. dba ThaiNY dba M-Thai dba Thai Rice dba Tom Yum, 9999 Midtown Corp. dba ThaiNY dba M-Thai dba Thai Rice dba Tom Yum, Perapong Chotimanenophan aka Peter Chotimanenophan, Michael P. Bronstein, and Chardenpong Oonapanyo.*

[6] Because multiple sets of exhibits were admitted by the Remaining Plaintiffs, the numbers at trial overlapped. To avoid confusion of the record, the Court includes an Appendix to this opinion listing the exhibits that were admitted at trial which assigns numbers to those exhibits which may differ from the overlapping and confusing exhibit numbers that were presented at trial.

Court notes that the Debtor requested and was provided a translator during the proceeding. Initially, she alternated between testifying through the translator and bypassing the translator. At some point in the proceedings, the Debtor ceased using the translator altogether. The Debtor demonstrated a clear ability to understand and converse in English.

The parties were offered an opportunity to submit post-trial memoranda. Only the Debtor chose to exercise this option and filed a post-trial memorandum on August 3, 2023. ECF No. 65. Thereafter, the adversary proceeding was marked submitted.

## DISCUSSION

### *Denial of Discharge 11 U.S.C. § 727(a)(4)(A)*

The second cause of action of the Amended Complaint objects to discharge under § 727(a)(4)(A). It is well established that denying a debtor's discharge is a drastic remedy that must be construed strictly in favor of the debtor. *D.A.N. Joint Venture, et al. v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir. 2006). However, a discharge under § 727 is a privilege, not a right, which may only be granted to the honest debtor. *Congress Talcott Corp. v. Anthony Sicari (In re Sicari)*, 187 B.R. 861, 880 (Bankr. S.D.N.Y. 1994). Section 727(a)(4)(A) provides, in pertinent part:

> The court shall grant the debtor a discharge, unless—
> > (4) the debtor knowingly and fraudulently, in or in connection with the case—
> > > (A) made a false oath or account[.]

11 U.S.C. § 727(a)(4)(A).

Under this section, the petition, schedules and statements, filed under penalty of perjury, are equivalent to an oath. *TD Bank v. Nazzaro (In re Nazzaro)*, Adv. Proc. No. 10-8500, 2013 WL 145627, *6 (Bankr. E.D.N.Y. Jan. 14, 2013). The plaintiff must prove by a preponderance of the evidence that "(1) the debtor made a statement under oath; (2) the statement was false; (3) the

debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 228 (E.D.N.Y. 2000) (quoting *In re Dubrowsky*, 244 B.R. 560, 572 (E.D.N.Y. 2000)). "Once a plaintiff produces evidence of a false statement, the burden shifts to the debtor to produce a 'credible explanation'", absent which, "a court may infer fraudulent intent." *Virovlyanskiy v. Virovlyanskiy (In re Virovlyanskiy)*, 485 B.R. 268, 272 (Bankr. E.D.N.Y. 2013) (citations omitted). Even a single false oath or account is sufficient to deny a debtor's discharge. *See In re Nazzaro*, 2013 WL 145627, at *7 (collecting cases).

The false oath must be made with fraudulent intent which the Court may infer from the circumstances of the case, including the debtor's conduct. *See O'Connell v. DeMartino (In re DeMartino)*, 448 B.R. 122, 128 (Bankr. E.D.N.Y. 2011) (collecting cases discussing how fraudulent intent may be inferred from all the facts and circumstances of the case), *aff'd* 2014 WL 1572580 (E.D.N.Y. Apr. 2014). If the record shows the debtor exhibited reckless indifference to the truth, that is sufficient to establish fraudulent intent. *Id.* A series of misstatements in the petition and schedules can amount to a reckless disregard for the truth. *See Darwin Spaulding Living Trust v. Carl (In re Carl)*, 517 B.R. 53, 69 (Bankr. N.D.N.Y. 2014).

The Court finds that the Debtor made multiple false statements in her schedules and statements and exhibited a reckless indifference to the truth sufficient to establish fraudulent intent under § 727(a)(4)(A). First, Question 4 on Official Form 107 (Statement of Financial Affairs for Individuals Filing for Bankruptcy) ("SFA") requires debtors to report income from employment or from operating a business during the current year and the previous two calendar years. The Debtor, in her initial filing on the Petition Date, reported $0 income for 2020 and 2019, and $8,600 income for 2018. ECF No. 1. On January 13, 2021, the Debtor filed amended

schedules showing that she failed to disclose in her original SFA that she earned $9,000 for the year 2019 and $9,598 for the year 2020.[7] ECF No. 22. Next, the Debtor initially reported no dependents on Schedule J (expenses). ECF No. 1. The Debtor testified at trial that she has children, the youngest of which was born in September 2010. Transcript of June 13, 2023 Trial ("Tr."), at 107.[8] She also testified that she claimed these children as dependents on her 2019 and/or 2020 tax returns. Tr. at 107. However, the Debtor failed to report any dependents on Schedule J until she filed amended schedules on January 13, 2021, showing she has two dependent children ages 10 and 13, and one other dependent, her father. Finally, the Debtor originally reported in response to Question 27 of the SFA that she was an officer or owner of both Prosperity 89 Corp. and Lucky Charm within four years preceding the Petition Date. ECF No. 1. She later amended her SFA and removed Lucky Charm from her response to Question 27. ECF No. 22. At trial, the Debtor testified that she has never been an owner of or served in any managerial role at Lucky Charm. Tr. at 48-49. However, during cross-examination, the Remaining Plaintiffs produced an Affidavit of Confession of Judgment which the Debtor signed under penalty of perjury on November 6, 2020, as both the President of Prosperity 89 Corp. and

---

[7] When questioned about her income and whether she was issued W-2s by the company, the Debtor answered, "I got paid by cash. Some company, I may get W-2, but very little." Transcript of June 13, 2023 Trial ("Tr."), at 52. When asked whether she reported her cash income in her tax returns, Debtor's counsel instructed her not to answer and the Debtor asserted her Fifth Amendment right against self-incrimination. *Id.*

[8] The Debtor's counsel objected at trial to this line of questioning on the grounds that the Amended Complaint only contained allegations of a false oath regarding the Debtor's failure to list her 2019 and 2020 income. The Court overruled the objection. Tr. at 107. The Remaining Plaintiffs did not move to amend the pleadings after trial. However, typically "formal amendment is needed only when evidence is objected to at trial as not within the scope of the pleadings." *Sec. & Exch. Comm'n v. Rapp,* 304 F.2d 786, 790 (2d Cir. 1962). The Court finds that the Debtor is not prejudiced by these additional allegations because they are within the scope of the § 727(a)(4)(A) claim which alleges false statements in the Debtor's petition and schedules.

Lucky Charm.[9] Ex. 25, Aff. of Confession of J. She originally denied signing the affidavit on behalf of Lucky Charm. Tr. at 115. Then, the Debtor acknowledged her signature on this document and did not offer any explanation for the inconsistency between this document and her testimony. *Id.* at 116-17. Rather, the Debtor asserted her Fifth Amendment right against self-incrimination. *Id.* at 125-128. The affidavit clearly states that the Debtor was the President, and therefore, an officer, of Lucky Charm. Thus, the SFA as amended stating to the contrary is false.

The Debtor claims that when she reviewed her schedules and statements with her counsel before they were filed with the Court her 2019 and 2020 income were correctly listed. However, she argues her bankruptcy counsel had a software malfunction that caused the omission of that information from the schedules and statements before they were filed with the Court. *Id.* at 92-99. The Debtor did not call her bankruptcy counsel as a witness to prove this point. Instead, she offered into evidence an unauthenticated letter from her bankruptcy counsel to the chapter 7 trustee. *Id.* at 97. The Remaining Plaintiffs objected to the admission of this letter, and the letter was not admitted. *Id.* at 98. In any event, the Debtor cannot rely on law office error to negate false sworn statements. *See, e.g.*, *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1583 n.4 (2d Cir. 1983) (finding the debtor's "attempts to justify his misconduct by the actions of others and his own inadvertence are unpersuasive"). As to the failure to list her dependents, the Debtor offers no explanation other than that it was an immaterial "inadvertent oversight." Def.'s Post-Trial Mem. of Law, ECF No. 65. Finally, with respect to her misrepresentation over her title as President of Lucky Charm, she claims that the company was worthless at the time of the

---

[9]     This confession of judgment was signed by the Debtor in connection with a settlement agreement entered into in an action brought against her and other defendants in the District Court for alleged violations of federal and state wage, hour and overtime laws. *Prudente v. Prosperity 89 Corp. (dba Thais New York), Lucky Charm 6365 Corp. (dba Thais New York), Adidsuda Chunton, Gift Rakowski and Bipen Doe*, Case No. 18-cv-06796-RA-KHP ("District Court Action #3").

bankruptcy filing and she continues to maintain that she had no managerial role at Lucky Charm—despite her having signed the confession of judgment as "President" of Lucky Charm. *See id.*

The Court finds that the Debtor's trial testimony was inconsistent and not credible. *See Moreo v. Rossi (In re Moreo)*, 437 B.R. 40, 63 (E.D.N.Y. 2010) (recognizing that "on the issue of the alleged 'false oaths,' the credibility of the bankrupt is a very important factor" (quoting *In re Tabibian*, 289 F.2d 793, 795 (2d Cir. 1961))). The totality of the Debtor's failures in this case demonstrates a reckless indifference for the truth, and thus the Court finds the Debtor's omissions from her schedules to be knowing and fraudulent. The inaccuracies and omissions, particularly with respect to income, are material to the Debtor's bankruptcy filing and the trustee's understanding of the Debtor's financial condition. *See Abraham v. Stuart (In re Abraham)*, 693 F. App'x 59, 61 (2d Cir. 2017); *Dubrowsky v. Perlbinder (In re Dubrowsky)*, 244 B.R. 560, 572 (E.D.N.Y. 2000) ("Successful administration of the bankruptcy law depends on the debtor's full disclosure."). Furthermore, "materiality does not require a showing that the creditors were prejudiced by the false statement." *In re Robinson*, 506 F.2d 1184, 1188 (2d Cir. 1974). Thus, the Debtor's argument that Lucky Charm was a worthless corporation is unavailing. The Debtor has failed to provide any satisfactory explanation for her omissions and false statements. For all these reasons, the Debtor's discharge shall be denied pursuant to § 727(a)(4)(A).

### *Priority Claim Status under 11 U.S.C. § 507(a)(4)*

The Amended Complaint also alleges that the Remaining Plaintiffs are entitled to priority claim status under § 507(a)(4)(A) for all wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by them within the 180 days before the Petition Date.

Although each of the Plaintiffs filed proofs of claim none of them sought priority under § 507(a)(4)(A) in the claim. Further, according to the Remaining Plaintiffs' own exhibits, it appears that none of them worked for the Debtor in the 180-day period preceding the Petition Date. *See* Ex. 20, Sarikaputar Aff., ¶ 39; Ex. 21, Sukasawett Aff., ¶ 5; Ex. 22, Kittironnakornkul Aff., ¶ 28; Ex. 23, Sirimatrasit Aff., ¶ 5; Ex. 24, Cumes Aff., ¶ 22. The Remaining Plaintiffs introduced no other evidence at trial on this issue. The Court will not make any findings as to their priority status at this time.

## CONCLUSION

Judgment is granted in favor of the Remaining Plaintiffs under § 727(a)(4)(A), and the Debtor's discharge will be denied. Denial of the discharge in its entirety renders the § 523(a)(6) moot and this Court will not consider this claim at this time. Judgment consistent with this Decision shall be entered forthwith.



Dated: Central Islip, New York
August 24, 2023

Robert E. Grossman
United States Bankruptcy Judge